IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    3:13-cr-00299-BR

        Plaintiff,                          OPINION AND ORDER

v.

FEDERICO MARTINEZ,

        Defendant.


**Scott Asphaug**
Acting United States Attorney
**AMY E. POTTER**
Assistant United States Attorney
405 E. Eighth Avenue
Suite 2400
Eugene, OR 97401
(541) 465-6771

        Attorneys for Plaintiff

**LISA HAY**
Federal Public Defender
**ELIZABETH G. DAILY**
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204
(503) 326-2123

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Federico Martinez's Motion (#233) Under 18 U.S.C. § 3583(c)(1)(A)(i) For Early Release.  The Court concludes the record is sufficiently developed, and, therefore, oral argument would not be helpful to resolve this Motion.  For the reasons that follow, the Court **DENIES** Defendant's Motion.


## BACKGROUND

On September 24, 2013, Defendant and three co-conspirators were charged in a Superseding Indictment with one count of Conspiracy to Distribute Heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C) and one count of Distribution of Heroin Resulting in Serious Bodily Injury in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

The government describes the criminal conduct underlying the Superseding Indictment as follows:

> This case began with a tragedy; in May 2013, a 17-year old (MV1) overdosed on heroin.  As a result of the overdose, MV1 was on life-support for many months and now has life-long disabilities.
>
> Law enforcement began an investigation into the source of the heroin.  MV1 received the heroin from a friend who purchased it from a street level dealer.  Working up the chain of supply, law enforcement determined that the dealer purchased the heroin from co-defendant DeLeon.  DeLeon soon identified his source of supply - codefendant

> Tovar-Ramos.  Defendant was living at the same
> residence as Tovar-Ramos and admitted to being
> involved in the distribution of heroin.

Gov't Resp. to Def.'s Mot. under 18 U.S.C. § 3582(c)(1)(A) for

Early Release at 1-2 (citations omitted).

On December 23, 2014, Defendant pled guilty pursuant to a

plea agreement to the one count of Conspiracy to Distribute

Heroin.

On January 20, 2016, the Court sentenced Defendant to 135

months imprisonment and five years of supervised release.

On December 3, 2020, Defendant filed a Motion Under 18

U.S.C. § 3583(c)(1)(A)(i) For Early Release.  The Court took

Defendant's Motion under advisement on February 2, 2021.


## DISCUSSION

Defendant is currently housed at FCI Bastrop and has a

projected release date of May 25, 2023.[1]  Defendant moves for an

order reducing his sentence to time served and releasing him to

home confinement pursuant to § 3582(c)(1)(A)(i) on the grounds

that he suffers from serious medical conditions, he has lost

members of his family to COVID, he would like to be able to

assist his family, and he will not be a danger to the community.

I.   **FSA Compassionate Release Standards**

---

[1] Defendant notes as of December 3, 2020, he had served
approximately 70 percent of his sentence.

3 - OPINION AND ORDER

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824-25 (2010)(quoting 18 U.S.C. § 3582(b)).  Compassionate release is an exception in extraordinary cases.

On December 21, 2018, the FSA amended 18 U.S.C. § 3582(c)(1)(A) to provide:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative [remedies] *or the lapse of 30 days from the receipt of such a request by the warden* of the defendant's facility, whichever is earlier may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

First Step Act of 2018, 132 Stat. 5194, Pub. L. No. 115-391 (2018)(emphasis added).

Application Note 1 to the United States Sentencing Guidelines (U.S.S.G.) § 1B1.13, the applicable Sentencing Commission policy statement relating to the FSA, sets out the relevant extraordinary and compelling reasons as follows:

1.  Extraordinary and Compelling Reasons.–

4 - OPINION AND ORDER

. . . extraordinary and compelling reasons
exist under any of the circumstances set
forth below:

(A) Medical Condition of the Defendant.--

* * *

(ii) The defendant is--

(I) suffering from a serious
physical or medical condition,

* * *

that substantially diminishes the ability of
the defendant to provide self-care within the
environment of a correctional facility and
from which he . . . is not expected to
recover.

* * *

(C) Family Circumstances

(i) The death or incapacitation of the
caregiver of the defendant's minor child
or minor children.

(ii) The incapacitation of the
defendant's spouse or registered partner
when the defendant would be the only
available caregiver for the spouse or
registered partner.

The policy statement also requires the court to consider whether

the defendant is "a danger to the safety of any other person or

to the community, as provided in 18 U.S.C. § 3142(g)" when a

defendant satisfies the requirements of § 1B1.13(1).  U.S.S.G.

§ 1B1.13(2).  In the District of Oregon District Judge Ann Aiken

concluded in *United States v. Joling*, No. 6:11-CR-60131-AA, 2020

WL 1903280, at *3 (D. Or. Apr. 17, 2020), that the policy

5 - OPINION AND ORDER

statement in U.S.S.G. § 1B1.13(2) is advisory rather than
mandatory in the context of motions for compassionate release.
In *United States v. Millage*, 464 F. Supp. 3d 1218, 1220 (D. Or.
June 2, 2020), and *United States v. Cole*, No. 3:18-CR-00573-IM,
2020 WL 4736298, at *3 (D. Or. Aug. 15, 2020), District Judges
Michael H. Simon and Karin J. Immergut respectively also reached
the same conclusion.  In all of these cases, however, whether
defendants posed a danger to the safety of any other person or
the community was consistently a major consideration.  This Court
has found the reasoning in the above cases to be persuasive and
concluded the policy statement in U.S.S.G. § 1B1.13(2) is
advisory rather than mandatory in the context of motions for
compassionate release.  *See United States v. Willis,* 3:02-cr-
00120-BR, Opin. and Order (#227) issued Jan. 13, 2021; *United
States v. Brito*, 3:08-cr-00473-BR, Opin. and Order (#118) issued
Jan. 16, 2021.  As in *Willis* and *Brito*, the Court will consider
whether a defendant is a danger to the community when the
defendant satisfies the requirements of § 1B1.13(1).

18 U.S.C. § 3142(g) sets out the following factors the Court
must consider when evaluating whether a defendant is a danger to
the community:

> (1) the nature and circumstances of the offense
> charged, including whether the offense . . .
> involves a minor victim . . .;

> (2) the weight of the evidence against the person;

            (3) the history and characteristics of the person,
            including--
                    (A) the person's character, physical and
                    mental condition, family ties, employment,
                    financial resources, length of residence in
                    the community, community ties, past conduct,
                    history relating to drug or alcohol abuse,
                    criminal history, and record concerning
                    appearance at court proceedings; and

                            *  *  *

            (4) the nature and seriousness of the danger to
            any person or the community that would be posed by
            the person's release.

A defendant seeking a reduction in his term of imprisonment
bears the burden to establish both that he has satisfied the
procedural prerequisites for judicial review and that compelling
and extraordinary reasons exist to justify compassionate release.
18 U.S.C. § 3582(c)(1)(A).

## II. The Court's Authority to Modify Defendant's Sentence

As noted, "'[a] judgment of conviction that includes [a
sentence of imprisonment] constitutes a final judgment' and may
not be modified by a district court except in limited
circumstances." *Dillon*, 560 U.S. at 824-25 (quoting 18 U.S.C.
§ 3582(b)). *See also United States v. Penna*, 319 F.3d 509, 511
(9th Cir. 2003)(courts generally may not correct or modify a
prison sentence after it has been imposed unless expressly
permitted by statute or by Federal Rule of Criminal Procedure
35). As also noted, the FSA provides a limited exception for
courts to modify a final judgment of conviction "upon motion of

. . . the defendant after the defendant has fully exhausted all administrative [remedies]."  18 U.S.C. § 3582(c)(1)(A).

The parties agree Defendant has exhausted his administrative remedies because on June 9, 2020, he submitted a request for compassionate release to the warden of FCI Bastrop and on June 18, 2020, the warden denied Defendant's request.

The Court also concludes on this record that it has the authority to decide Defendant's Motion pursuant to the FSA.

**III. Defendant's Medical Condition**

Defendant asserts he has serious medical conditions within the meaning of U.S.S.G. § 1B1.13(1)(A).

As noted, an extraordinary or compelling reason for compassionate release exists when a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Application Note to U.S.S.G. § 1B1.13(1)(A).

Defendant notes there have been confirmed cases of COVID-19 at FCI Bastrop.  Defendant asserts he falls into the category of inmates who are at a heightened risk of serious illness from COVID-19 because although he is only 36 year old, he is obese and has high cholesterol.

The government does not dispute there have been confirmed

cases of COVID-19 at FCI Bastrop.  The government, however, asserts Defendant has not established his health conditions satisfy the extraordinary and compelling standard for compassionate release.

The Court notes some judges in this district have concluded younger inmates with obesity do not satisfy the extraordinary or compelling standard.  For example, Judge Michael Mosman recently found a defendant who was 32 years old and suffered from obesity, inflammatory bowel disease, and "medical issues related to a heart murmur" did not suffer from medical conditions that were sufficiently serious to establish an extraordinary and compelling reason for compassionate release.  *United States v. Holt*, No. 3:18-CR-00297-MO, 2021 WL 496774, at *1 (D. Or. Feb. 10, 2021).  Judge Mosman concluded:  "Given those health conditions and [the defendant's] relatively young age, I am not convinced that he has demonstrated circumstances that rise to the level of "extraordinary and compelling."  *Id*.  Judge Ann Aiken reached a similar conclusion in *United States v. Chambers* when the 37-year-old defendant was obese but did not have other COVID risk factors.  No. 6:16-CR- 00377-AA, 2020 WL 7625232 (D. Or. Dec. 22, 2020).

In addition, courts in other districts have concluded chronic but relatively mild conditions do not satisfy the extraordinary or compelling standard.  *See, e.g., United States*

9 - OPINION AND ORDER

*v. Whiteman*, No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020)(mild obesity and hypertension of the 42-year-old defendant did not establish extraordinary circumstances); *United States v. Pena*, No. 2:15-CR-72-PPS, 2020 WL 3264113, at *3 (N.D. Ind. June 17, 2020)("Even considering Pena's obesity, sleep apnea, kidney failure seven years ago, and family history of cancer and diabetes in the midst of the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard.").

On this record the Court concludes Defendant has not established he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." Application Note to U.S.S.G. § 1B1.13(1)(A).

**IV.  Defendant's Family Circumstances**

As noted, family circumstances may also satisfy the extraordinary and compelling standard in the case of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse or registered partner." § 1B1.13(1)(C).

Defendant asserts he has also established extraordinary and compelling circumstances exist to warrant compassionate release based on his family situation.  Specifically, Defendant notes his

mother and brother died of COVID, and his wife and two minor children had COVID and recovered.  Defendant also notes his wife has diabetes and his 70-year-old father lives alone.  Defendant asserts "[t]hose still living could use [his] help.  [He] needs to be strong and healthy to be there and help his family financially and emotionally."  Def.'s Mot. at 2-3.

The government contends, however, even though Defendant's family circumstances are unfortunate, they do not meet the criteria set out in § 1B1.13(1)(C)(i) or (ii).  As noted, those provisions state extraordinary and compelling circumstances exist when there is the death or incapacitation of the caregiver of the defendant's minor children and/or the incapacitation of the defendant's spouse when the defendant would be the only available caregiver for the spouse.  Defendant does not allege his wife died, that she is currently incapacitated, that Defendant is the only available caregiver for his wife.  In addition, the government points out that Defendant is a United States citizen, but his father, wife, and minor children live in Mexico. Moreover, it is unclear on this record whether Defendant would be permitted to return to or to travel to Mexico even if he was released.

In any event, Defendant states in his Reply that his release plan is to live with his uncle in Estacada and that he has work "lined up" in his uncle's restaurant there.  It appears,

therefore, that even if Defendant's family circumstances were sufficient to constitute extraordinary and compelling circumstances, Defendant's release would only permit him to assist his family by sending funds to Mexico, which is not the kind of care intended under § 1B1.13(1)(C). *See, e.g., United States v. Kniss*, No. 3:18-CR-00142-MO, 2020 WL 6200183, at *2 (D. Or. Oct. 21, 2020)(noting it is "difficult for a family when one parent goes to prison, and that is particularly true right now with COVID-19 disrupting jobs and childcare," but declining to find it qualifies as an extraordinary and compelling circumstance when the defendant merely wants to provide financial support).

The Court, therefore, concludes Defendant has not established an extraordinary or compelling reason for compassionate release exists in this case. Accordingly, the Court **DENIES** Defendant's Motion For Early Release. Because the Court has concluded Defendant has not established he suffers from a sufficiently serious medical condition or that his family circumstances are extraordinary or compelling, the Court does not address whether Defendant would be a danger to the community if he was released.

## <u>CONCLUSION</u>

For these reasons, the Court **DENIES** Defendant's Motion (#233) Under 18 U.S.C. § 3583(c)(1)(A)(i) For Early

12 - OPINION AND ORDER

Release.

IT IS SO ORDERED.

DATED this 1st day of March, 2021.


       S/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge


13 - OPINION AND ORDER